UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILBER HARRIS § | |
| § | |
| *Plaintiff* § | |
| § | |
| vs. § | CASE NO. 4:19-CV-4293 |
| § | |
| CHI ST. LUKE'S HEALTH BAYLOR § | JURY REQUESTED |
| COLLEGE OF MEDICINE MEDICAL § | |
| CENTER D/B/A BAYLOR ST. LUKE'S § | |
| MEDICAL CENTER AND BAYLOR § | |
| COLLEGE OF MEDICINE § | |
| § | |
| *Defendants* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, WILBER HARRIS (hereinafter referred to as "Plaintiff"), and files this Original Complaint complaining of Defendants CHI ST. LUKE'S HEALTH BAYLOR COLLEGE OF MEDICINE MEDICAL CENTER D/B/A BAYLOR ST. LUKE'S MEDICAL CENTER AND BAYLOR COLLEGE OF MEDICINE (hereinafter collectively referred to as "Defendants"), and in support thereof, would respectfully show as follows:

## I.
## PARTIES

1. Plaintiff, WILBER HARRIS, is an individual who is a citizen of the United States and the State of Colorado.

2. Defendant, CHI ST. LUKE'S HEALTH BAYLOR COLLEGE OF MEDICINE MEDICAL CENTER D/B/A BAYLOR ST. LUKE'S MEDICAL CENTER is a Texas nonprofit corporation with its principal place of business in Harris County, Houston, Texas. It may be served

through its registered agent, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

3. Defendant, BAYLOR COLLEGE OF MEDICINE is a Texas nonprofit corporation with its principal place of business in Harris County, Houston, Texas. It may be served through its registered agent, James Banfield, One Baylor Plaza, Suite 106A, Houston, Texas 77030.

## II.
## JURISDICTION AND VENUE

4. The Court has jurisdiction under 28 U.S.C. § 1332 based on diversity because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is proper in this district because Defendants reside in this district, and a substantial part of the events or omissions giving rise to these claims occurred in this district. *See* 28 U.S.C. § 1391(b) (1); 28 U.S.C. § 1391(b) (2).

## III.
## FACTUAL ALLEGATIONS

6. Bryan Mahan, M.D. referred Plaintiff to Joseph Coselli, M.D. for repair of an Extent II thoracoabdominal aneurysm.

7. On June 14, 2018, Plaintiff was admitted to CHI ST. LUKE'S HEALTH BAYLOR COLLEGE OF MEDICINE MEDICAL CENTER D/B/A BAYLOR ST. LUKE'S MEDICAL CENTER ("BAYLOR ST. LUKE'S").

8. On June 14, 2018, Dr. Coselli, assisted by Kim Insua De la Cruz, M.D., Vicente Orozco-Sevilla, M.D., Corinne Tan, M.D., Michael Ryan Reidy, M.D., and Jorge Portuondo, M.D. (Dr. Coselli and the other physicians are hereinafter collectively referred to as "BAYLOR

COLLEGE OF MEDICINE PHYSICIANS"), performed surgery on Plaintiff at BAYLOR ST. LUKE'S.

9. BAYLOR COLLEGE OF MEDICINE has stipulated that all physicians identified in paragraph 8, above, were physicians of BAYLOR COLLEGE OF MEDICINE acting in the course and scope of employment when providing healthcare services to Plaintiff at BAYLOR ST. LUKE'S in June 2018, including the surgery on June 14, 2018.

10. During abdominal surgeries, surgeons and operating room staff typically use radiopaque surgical towels.

11. Radiopaque towels are identifiable by x-ray scan.

12. During Plaintiff's June 14, 2018 surgery, a non-radiopaque towel was used by one or more of the BAYLOR COLLEGE OF MEDICINE PHYSICIANS.

13. Non-radiopaque towels are not identifiable by x-ray scan.

14. A BAYLOR ST. LUKE'S registered nurse circulator was responsible for maintaining a count list of surgical items not intended to remain in Plaintiff during Plaintiff's June 14, 2018 surgery.

15. A non-radiopaque towel used during Plaintiff's June 14, 2018 surgery was not included on the count list of surgical items not intended to remain in the patient.

16. At the conclusion of the June 14, 2018 surgery, a non-radiopaque towel was left inside Plaintiff.

17. The BAYLOR ST. LUKE'S registered nurse circulator's final count list of surgical items for Plaintiff's June 14, 2018 surgery, incorrectly reflected that there were no retained surgical items.

18. On post-operative day eight, Plaintiff developed abdominal distention.

19. Three KUB abdominal x-ray scans were performed during Plaintiff's hospitalization at BAYLOR ST. LUKE'S.

20. Interpretations of the three KUB abdominal x-ray scans performed during Plaintiff's hospitalization at BAYLOR ST. LUKE'S did not identify the retained surgical towel.

21. On June 28, 2018, Plaintiff was discharged to his home in Colorado from BAYLOR ST. LUKE'S.

22. Plaintiff was admitted to UC Health Memorial, in Colorado, on August 16, 2018. According to the medical records, Plaintiff presented with purulent and foul-smelling drainage from his open incision. Plaintiff was taken to surgery on this date, and a surgical towel was discovered and removed.

23. As a result of the retained surgical towel, Plaintiff sustained injuries that required home health care.

24. The retained surgical towel is not the only incident of a retained surgical item that has been documented to have occurred at BAYLOR ST. LUKE'S in 2018.

25. The U.S. Department of Health and Human Services Centers for Medicare & Medicaid Services completed a survey of BAYLOR ST. LUKE'S on April 4, 2019 (hereinafter referred to as "HHS Survey").

26. The HHS Survey summary statement of deficiencies at BAYLOR ST. LUKE'S stated that a review of quality minutes revealed the following retained surgical items:

    a. May 2018: Lap sponge

    b. June 14, 2018: Surgical towel

    c. July 25, 2018: Cervical instrument

   d.  September 2018: The count sheet was revised and mandatory staff education was given.

27. The June 14, 2018 incident of a retained surgical towel recorded in the HHS Survey involves Plaintiff's surgery at BAYLOR ST. LUKE'S.

## IV.
## CAUSES OF ACTION

### COUNT 1:
### NEGLIGENCE OF BAYLOR COLLEGE OF MEDICINE

28. Defendant BAYLOR COLLEGE OF MEDICINE, in the course of rendering surgical services to Plaintiff on June 14, 2018, committed acts and/or omissions that constitute negligence as that term is defined by law, including:

   a.  Failure of BAYLOR COLLEGE OF MEDICINE PHYSICIANS to use only radiopaque instruments and other materials intraoperatively and postoperatively.

   b.  Use of a non-radiopaque surgical towel by BAYLOR COLLEGE OF MEDICINE PHYSICIANS during surgery.

   c.  Failure of BAYLOR COLLEGE OF MEDICINE PHYSICIANS to evaluate the surgical field to find and remove any foreign object at the end of the surgery.

29. Defendant BAYLOR COLLEGE OF MEDICINE is liable under the doctrine of *respondeat superior*, and/or other agency principles for its employees, vice principals, borrowed servants, representatives and/or agents.

30. The above-mentioned acts and/or omissions of Defendant BAYLOR COLLEGE OF MEDICINE were a proximate cause of the occurrence in question and the damages alleged by Plaintiff.

## COUNT 2:
## NEGLIGENCE OF BAYLOR ST. LUKE'S

31. Defendant BAYLOR ST. LUKE'S, in the course of rendering health care and nursing services to Plaintiff on June 14, 2018, committed acts and/or omissions that constitute negligence as that term is defined by law, including:

   a. Failure of the registered nurse circulator to lead the accurate count of radiopaque soft goods, sharps, miscellaneous items, and instruments, viewing the surgical items being counted.

   b. Failure of the registered nurse circulator to record in a visible location the accurate counts of soft goods, sharps, and miscellaneous items.

   c. Failure of the registered nurse circulator to communicate with the scrub team members regarding surgical items.

   d. Failure of the registered nurse circulator to lead the account reconciliation and report any count discrepancy.

   e. Failure of the registered nurse circulator to document accurate count activities in the medical record.

   f. Failure of the registered nurse circulator, by means of an accurate counting process, to ensure that all surgical items are removed from the patient's body at the conclusion of the surgical procedure.

g. Failure of the scrub person (whether a nurse, surgical technologist, or other personnel) to maintain awareness of the location of soft goods, sharps, and instruments on the sterile field and in the wound.

h. Failure of the scrub person (whether a nurse, surgical technologist, or other personnel) to know the character and configuration of items that are used by the surgeons and first assistant.

i. Failure of the scrub person (whether a nurse, surgical technologist, or other personnel) to verify the integrity and completeness of items returned from the surgical site.

j. Failure of the scrub person (whether a nurse, surgical technologist, or other personnel) to communicate with the surgeon and assistant regarding surgical items.

k. Failure of the scrub person (whether a nurse, surgical technologist, or other personnel) to communicate with the registered nurse circulator regarding surgical items.

l. Failure of the scrub person (whether a nurse, surgical technologist, or other personnel) to accurately count surgical items in a manner that allows the registered nurse circulator to see the surgical items being counted.

m. Failure of the scrub person (whether a nurse, surgical technologist, or other personnel) to speak up when a discrepancy exists and participate in the account reconciliation activities.

n. Failure of the scrub person (whether a nurse, surgical technologist, or other personnel), by means of an accurate counting process, to ensure that all

     surgical items are removed from the patient's body at the conclusion of the surgical procedure.

   o. Failure of the registered nurse circulator and scrub person (whether a nurse, surgical technologist, or other personnel) to prevent a retained surgical towel.

32. Defendant BAYLOR ST. LUKE'S is liable under the doctrine of *respondeat superior*, and/or other agency principles for its employees, vice principals, borrowed servants, representatives and/or agents.

33. The above-mentioned acts and/or omissions of Defendant BAYLOR ST. LUKE'S were a proximate cause of the occurrence in question and the damages alleged by Plaintiff.

## V.
## DAMAGES

34. Plaintiff has been greatly injured and damaged in an amount that is within jurisdictional limits of this Court for which he now pleads.

35. Plaintiff would show that, as a direct and proximate result of the negligent acts and/or omissions of the Defendants as set out above, he has suffered the following damages:

   a. Medical expenses in the past that, in reasonable probability, will continue for the balance of his natural life;

   b. Physical pain and mental anguish in the past that, in reasonable probability, will continue for the balance of his natural life; and

   c. Loss of earning capacity in the past that, in reasonable probability, will continue for the balance of his natural life;

36. Plaintiff is entitled to pre-judgment interest at the highest rate allowed by law, for which he now pleads.

WHEREFORE, Plaintiff Wilber Harris Plaintiff prays that Defendants be served with process and that upon trial by jury that Plaintiff have verdict and judgment against Defendants, jointly and severally, for actual damages shown and proved at trial, for pre-judgment and post-judgment interest, costs of court, and for all other relief at law and in equity to which he is entitled.

Dated:  November 1, 2019

        Respectfully submitted,

        By:   */S/ Robert W. Painter*
            Robert W. Painter
            Texas Bar No.  24013284
        Painter Law Firm PLLC
        12750 Champion Forest Drive
        Houston, Texas 77066
        Telephone:  281-580-8800
        Facsimile:  281-580-8802
        Email:  rpainter@painterfirm.com