UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILBER C. MR. HARRIS, § | |
| Plaintiff, § | |
| § | |
| VS. § | |
| § | |
| CHI ST. LUKE'S HEALTH § | CIVIL ACTION NO. 4:19-CV-4293 |
| BAYLOR COLLEGE OF § | |
| MEDICINE MEDICAL CENTER § | |
| D/B/A BAYLOR ST. LUKE'S § | |
| MEDICAL CENTER AND BAYLOR § | |
| COLLEGE OF MEDICINE. § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant CHI St. Luke's Health - Baylor St. Luke's Medical Center (St. Luke's)'s Motion to Enforce Settlement. (Dkt. 61). Having considered the parties' filings, the responses and replies thereto, the applicable law, and the evidence presented during the evidentiary hearing conducted on January 20, 2023, the Court finds that St. Luke's motion should be **GRANTED**.

### FACTUAL BACKGROUND

Mr. Harris brought suit against the Baylor College of Medicine ("BCM") and St. Luke's after two BCM residents left a draping towel in his abdomen during an aortic dissection repair surgery. Mr. Harris settled with BCM during mediation proceedings. St. Luke's then filed a motion for partial summary judgment on the issue of gross negligence.

1

After the Court granted that motion, Mr. Harris and St. Luke's commenced settlement negotiations.

St. Luke's offered to settle the case for $80,000. Mr. Harris's counsel, Christopher Bradshaw-Hull, counter-offered $85,000. St. Luke's accepted, after which Mr. Bradshaw-Hull sent payment details. Two days later, Mr. Bradshaw-Hull notified St. Luke that the settlement offer was no longer valid because Mr. Harris "changed his mind." St. Luke's filed a motion to enforce the settlement. The Court held an evidentiary hearing on January 20, 2023, to determine whether Mr. Bradshaw-Hull had authority to engage in settlement negotiations on Mr. Harris' behalf.

## LEGAL STANDARD

The Fifth Circuit has recognized that "a district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (internal quotations and citations removed).

A federal court sitting in diversity applies the law of the forum state when deciding whether to enforce a settlement agreement. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 266 (5th Cir. 1995). "More specifically, the enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by the provisions of Rule 11 [of the] Texas Rules of Civil Procedure." *Borden v. Banacom Mfg. and Mktg., Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988). Under Rule 11, a settlement

agreement is enforceable only if it is (1) "in writing, signed and filed with the papers as part of the record" or (2) "made in open court and entered of record." Tex. R. Civ. P. 11.

## ANALYSIS

St. Luke's moves to enforce the settlement agreement on the grounds that: (1) parties entered into an enforceable settlement agreement; (2) Mr. Harris had no valid basis for withdrawing from the agreement; and (3) St. Luke's relied upon the agreement. (Dkt. 61 at 3-5). In response, Mr. Harris argues that "there was a miscommunication and/or misunderstanding between [Mr. Harris] and his attorney" and that Mr. Harris "did not authorize his attorney to bind him to the alleged agreement." (Dkt. 65 at 2). The Court agrees with St. Luke's arguments for enforcing the settlement agreement. Furthermore, the Court finds no support for Mr. Harris' argument that Mr. Bradshaw-Hull lacked the express authority to settle Mr. Harris' case.

As an initial matter, the Court finds that the settlement agreement meets all three required elements for enforceability under Texas law—*i.e.*, the settlement agreement is (1) in writing; (2) signed; and (3) filed as part of the record. *See* Tex. R. Civ. P. 11.

First, the "in writing" requirement is met when there is "a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (quotation omitted). An email exchange—like the one here—satisfies the "in writing" requirement so long as it contains the material details and essential elements of

the parties' agreement. *See Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Hum. Servs.*, 540 S.W.3d 553, 561 (Tex. 2018) (finding that an email agreement satisfied Rule 11's "in writing" requirement); *Limon-Hernandez v. Target Corp.*, No. 3:19-CV-2817-N, 2021 WL 3812159, at *1 (N.D. Tex. Mar. 10, 2021) (same).

Second, Rule 11 requires not simply a writing, but a signed writing. Courts have held that a name or email address in the "from" field of an email satisfies the signed writing requirement. *See Limon-Hernandez*, 2021 WL 3812159, at *2. *See also Khoury v. Tomlinson*, 518 S.W.3d 568, 576 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding that the name or email address in the "from" field satisfied the Texas Uniform Electronic Transactions Act's signature requirement). Here, the names and email addresses of the lawyers are readily apparent in the "from" field of the email exchange.

Third, the relevant email exchange has been filed as part of the record. (Dkt. 61-2, 61-3, and 61-4).

Because the settlement agreement between Mr. Harris and St. Luke's is in writing, signed, and filed as part of the record, the Court concludes under Texas state law that a valid and enforceable settlement exists.

The Court further finds no credible evidence that Mr. Bradshaw-Hull lacked the express authority to settle Mr. Harris' case. "[A]n agreement by the attorney of record will be set aside only upon affirmative proof of the party seeking to vacate the [agreement] that the attorney had no right to consent to its entry." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984) (citation omitted). Here, the record lacks "affirmative proof" that Mr. Bradshaw-Hull had no right to engage in settlement negotiations, make a

4

counter-offer to St. Luke's, and initiate the payment process. Indeed, the record indicates that Mr. Bradshaw-Hull had the express authority to take those steps.

Mr. Bradshaw-Hull "believe[d] that on August 3, 2022, Wilber Mr. Harris authorized [him] to settle [Mr. Harris'] case." (Dkt. 65-1). Mr. Bradshaw-Hull argues that such belief was erroneous, the result of a misunderstanding between him and his client that was attributable to various health and family issues that Mr. Bradshaw-Hull was experiencing at the time. But given Mr. Bradshaw-Hull's experience, reputation, and ability, the Court cannot find that any misunderstanding that may have occurred—assuming there was an actual misunderstanding at all—was the fault of Mr. Bradshaw-Hull.

Indeed, the evidence submitted by both parties indicates that Mr. Harris either (1) expressly authorized Mr. Bradshaw-Hull to settle the case and "changed his mind" regarding the amount of the settlement two days later; or (2) expressly authorized Mr. Bradshaw-Hull to settle the case and "changed his mind" about whether he should have given Mr. Bradshaw-Hull that authority. (Dkts. 61-3, 65-1). The Court held an evidentiary hearing in order to give Mr. Harris the opportunity to rebut this evidence—*i.e.*, to testify that he never gave Mr. Bradshaw-Hull such express authority. But Mr. Harris provided disjointed and contradictory testimony during the hearing, and the Court disbelieves Mr. Harris' qualified, unclear assertions that he did not give Mr. Bradshaw-Hull express authority to settle his case. Instead, the Court finds that the record, and the testimony provided by Mr. Harris and Mr. Bradshaw-Hull, reflect that Mr. Harris gave Mr. Bradshaw-Hull authority to settle his case but "changed his mind"—for one reason or another—after

5

making a binding deal with St. Luke's. The Court will therefore grant St. Luke's motion to enforce the settlement agreement.

## CONCLUSION

St. Luke's Motion to Enforce Settlement (Dkt. 61) is **GRANTED.**

SIGNED at Houston, Texas on February 22, 2023.

                                              GEORGE C. HANKS, JR.
                                              UNITED STATES DISTRICT JUDGE